UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Consumer Financial Protection Bureau,<br>        Plaintiff,<br><br>        v.<br><br>Climb Credit, Inc., Climb Investco, LLC,<br>Climb GS Loan Fund 2018-1, LLC, 1/0<br>Holdco, LLC, and 1/0 Capital, LLC,<br>        Defendants. | Case No. 1:24-cv-07868<br><br>Judge Jennifer L. Rochon<br><br>~~[PROPOSED]~~ **STIPULATED FINAL<br>JUDGMENT AND ORDER** |

The Consumer Financial Protection Bureau (Bureau) commenced this civil action on October 17, 2024 to obtain injunctive and monetary relief and civil penalties from Defendants Climb Credit, Inc. (Climb Credit), Climb Investco, LLC (Investco), Climb GS Loan Fund 2018-1, LLC (CGS), 1/0 Holdco, LLC (1/0 Holdco), and 1/0 Capital, LLC (1/0 Capital). The Complaint alleges violations of sections 1031(a) and 1036(a) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a)(1)(A), in connection with the Defendants' marketing of private student loans to consumers. The Complaint also alleges violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. Part 1026, in Defendants' marketing of private student loans to consumers and making disclosures to consumers who took out such loans.

The Bureau and Defendants agree to entry of this Stipulated Final Judgment and Order (Order), without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

## FINDINGS

1.      This Court has jurisdiction over the parties and the subject matter of this action.

1

2.      Defendants neither admit nor deny the allegations in the Complaint, except as specified in this Order. For purposes of this Order, Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

3.      Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

4.      Entry of this Order is in the public interest.

## DEFINITIONS

5.      The following definitions apply to this Order:

a.      "**Affected Consumers**" includes any consumer who was assessed an origination fee by Defendants between January 1, 2014 and November 19, 2019.

b.      "**Assist[ing] Others**" includes, but is not limited to:

  i.      consulting in any form whatsoever;

  ii.     providing paralegal or administrative support services;

  iii.    performing customer-service functions on behalf of another entity, including but not limited to receiving or responding to consumer complaints;

  iv.     formulating, providing, or arranging for the formulation or provision of, any advertising or marketing material; and

  v.      acting or serving as an owner, officer, director, manager, or principal of any entity.

c.    "**Board**" means Defendants' respective, duly-elected, and acting Boards of

Directors or controlling members if the Defendant is not controlled by a Board

of Directors.

d.    "**Climb Loan**" means any private student loan offered to consumers that is

originated by Climb Credit's wholly owned subsidiary, Investco.

e.    "**Consumer Financial Product or Service**" is synonymous in meaning and

equal in scope to the definition of the term in section 1002(5) of the CFPA, 12

U.S.C. § 5481(5), and, subject to applicable restrictions contained in the CFPA,

includes but is not limited to:

  i.    extending credit and servicing loans, including acquiring,

purchasing, selling, brokering, or other extensions of credit (other

than solely extending commercial credit to a person who originates

consumer credit transactions); and

  ii.    providing financial advisory services to consumers on individual

consumer financial matters or relating to proprietary financial

products or services, including providing credit counseling to any

consumer or providing services to assist a consumer with debt

management or debt settlement, modifying the terms of any

extension of credit, or avoiding foreclosure.

f.    "**Defendants**" means Climb Credit, Inc.; Climb Investco, LLC; Climb GS

Loan Fund 2018-1, LLC; 1/0 Holdco, LLC; and 1/0 Capital, LLC, and their

respective successors and assigns, individually, collectively, or in any

combination.

g.      "**Effective Date**" means the date on which the Order is entered by the Court.

h.      "**Enforcement Director**" means the Enforcement Director of the Enforcement Division for the Bureau, or their delegate.

i.      "**Order Acknowledgement**" means a signed and dated statement acknowledging receipt of a copy of this Order.

j.      "**Partner Schools**" means schools with whom Defendants have partnered, directly or through intermediaries, to offer Climb Loans.

k.      "**Person**" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

l.      "**Related Consumer Action**" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendants based on substantially the same facts as described in the Complaint.

m.      "**Service Provider**" is synonymous in meaning and equal in scope to the definition of the term, as of the effective date, in section 1002(26) of the CFPA, 12 U.S.C. § 5481(26) and, subject to applicable restrictions contained in the CFPA, includes, but is not limited to, any Person that provides a material service to a Person that is a "covered person" under the CFPA, 12 U.S.C. § 5481(6), in connection with the offering or provision by such covered person of a Consumer Financial Product or Service, including a person that:

    i.      participates in designing, operating, or maintaining the Consumer Financial Product or Service; or

ii. processes transactions relating to the Consumer Financial Product or Service (other than unknowingly or incidentally transmitting or processing financial data in a manner that such data is undifferentiated from other types of data of the same form as the person transmits or processes).

n. "**TILA Disclosure**" means the final Truth in Lending Act disclosure that Defendants sent to any consumer taking out a Climb Loan.

## CONDUCT PROVISIONS

## I.

## Prohibited Conduct

**IT IS ORDERED** that:

6. Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering, or sale of any Consumer Financial Product or Service, in each case, on behalf of Defendants, including in distribution of advertising, marketing, or promotional materials to Partner Schools for use in communications with consumers, may not violate sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531(a) and 5536(a), and 12 C.F.R. §§ 1026.17(a)(1), 1026.17(d), 1026.24(c), 1026.24(d), and 1026.48(a), and are prohibited from:

a. Representing or Assisting Others in representing, expressly or impliedly, to consumers:

i. any outcomes achieved by graduates of educational programs at Partner Schools, including but not limited to representations

        related to salaries, median salaries, average salaries, increases in

        salaries, or rates of employment for such graduates; and

    ii.      that Defendants evaluate or vet the quality or outcomes of

        educational programs at Partner Schools, including but not limited

        to, that Defendants (A) evaluate potential Partner Schools or

        programs for value and outcomes, (B) identify quality educational

        programs for consumers, or (C) determine that a consumer's

        completion of a program at a Partner School would yield value for

        the consumer.

b.     In any TILA Disclosure, misrepresenting or Assisting Others in

    misrepresenting, expressly or impliedly, the finance charge to consumers.

c.     In any advertisement for closed-end credit, displaying the rate of finance

    charge for an advertised product without also displaying the applicable "annual

    percentage rate," using that term.

d.     In any advertisement for closed-end credit, displaying trigger terms for an

    advertised product without also displaying the applicable "annual percentage

    rate," using that term.

e.     In marketing of loans, using the name, emblem, or logo of Partner Schools in a

    manner that implies that those Partner Schools endorse Climb Loans, without a

    clear and conspicuous disclosure that is equally prominent and closely

    proximate to the reference to the Partner School that the Partner School does

    not endorse Climb Loans and that Defendants are not affiliated with the Partner

    School.

## II.

## Affirmative Requirements

**IT IS ORDERED**, under §§ 1053 and 1055 of the CFPA, that:

7.      Defendants, in connection with the advertising, marketing, promotion, or offering of any Consumer Financial Product or Service, must take the following affirmative actions:

  a. Possess prior substantiation for all of Defendants' express and implied claims.

  b. For a period of seven years from the Effective Date, clearly and prominently disclose on Climb Credit's website and in all consumer-facing marketing materials that Defendants provide to Partner Schools that consumers should not rely on Defendants to identify quality educational schools and programs.

  c. Establish, implement, and maintain written policies and procedures to ensure that Defendants' advertisements, marketing materials, websites, and loan disclosures operations comply with the TILA, and its implementing regulation, Regulation Z, and the CFPA's prohibition on unfair, deceptive, and abusive acts and practices.

  d. Establish, implement, and maintain a process to assess all of Defendants' advertisements, marketing materials, and websites for compliance with the TILA, and its implementing regulation, Regulation Z, and the CFPA's prohibition on unfair, deceptive, and abusive acts and practices before such advertisements, marketing materials, and websites are sent, distributed, or displayed to consumers.

  e. On at least a semi-annual basis, conduct an assessment of all of Defendants' previously disseminated advertisements, marketing materials, and websites for

compliance with the TILA, and its implementing regulation, Regulation Z, and the CFPA's prohibition on unfair, deceptive, and abusive acts and practices.

8.     Defendants must, for each Affected Consumer whose Climb Loan is owned by Defendants and is either in repayment or pre-charge-off collections as of or after the Effective Date, reform the Affected Consumer's Climb Loan agreement to eliminate the origination fee and recalculate the future interest owed on the loan based on the cost of the loan without the origination fee, and notify each Affected Consumer of that reformation and recalculation, within 30 days from the Effective Date.

## III.

## Compliance Plan

**IT IS FURTHER ORDERED** that:

9.     Within 45 days of the Effective Date, each Defendant must submit to the Enforcement Director for review and determination of non-objection, a comprehensive compliance plan designed to ensure that such Defendant's student-financing activities comply with all applicable laws that the Bureau enforces, including Federal consumer financial laws, and the terms of this Order (Compliance Plan). The Compliance Plan must include, at a minimum:

    a.     Detailed steps for addressing each action required by this Order.

    b.     A mechanism to ensure that the Defendants' respective Boards and Chief Executive Officers, Chief Operating Officers, and General Counsel (or officers with comparable responsibilities, if the Defendant does not employ officers with those titles) (collectively, Defendants' Executives) are kept apprised of the status of compliance actions.

      c.     Specific timeframes and deadlines for implementation of the steps described above.

10.    The Enforcement Director will have the discretion to make a determination of non-objection to the Compliance Plans or direct Defendants to revise them. If the Enforcement Director directs Defendants to revise the Compliance Plans, Defendants must revise and resubmit the Compliance Plans to the Enforcement Director within 15 days.

11.    After receiving notification that the Enforcement Director has made a determination of non-objection to its Compliance Plan, each Defendant must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in its Compliance Plan.

## IV.

### Role of the Board and Executives

**IT IS FURTHER ORDERED** that:

12.    Defendants' respective Boards have the ultimate responsibility for ensuring that each Defendant complies with this Order.

13.    Defendants' Executives and Boards must review all plans and reports required by this Order and any submissions to the Bureau prior to such submission.

14.    One year after the Effective Date, each Defendant must submit to the Enforcement Director an accurate written compliance progress report (Compliance Report) that has been approved by that Defendant's respective Board, the accuracy of which that Defendant swears to under penalty of perjury, and which, at a minimum:

      a.     Describes the steps that Climb Credit's Chief Executive Officer and Defendants' respective Boards have taken to reasonably assess whether the

respective Defendant is complying with the Compliance Plan and each applicable paragraph and subparagraph of the Order;

b.    Describes in detail whether and how the respective Defendant has complied with the Compliance Plan and each applicable paragraph and subparagraph of the Order, including the manner of verification of such compliance and any corrective actions taken to remedy potential non-compliance with the applicable requirement, paragraph, or subparagraph; and

c.    Attaches a copy of every Order Acknowledgement obtained under Section IX, unless previously submitted to the Bureau.

15.    Defendants' Boards and Executives must:

a.    Authorize whatever actions are necessary for the respective Defendant to assess whether Defendant is complying with the Compliance Plan and each applicable paragraph and subparagraph of the Order.

b.    Authorize whatever actions, including corrective actions, are necessary for the respective Defendant to fully comply with the Compliance Plan and each applicable paragraph and subparagraph of the Order.

c.    Require timely reporting by management to Defendants' respective Boards and Climb Credit's Chief Executive Officer on the status of compliance obligations.

## MONETARY PROVISIONS

## V.

### Order to Pay Redress

**IT IS FURTHER ORDERED** that:

16.     A judgment for monetary relief is entered in favor of the Bureau and against Defendants, jointly and severally, in the amount of $6,618,000 for the purpose of providing redress to Affected Consumers; however, full payment of the $6,618,000 judgment will be suspended upon satisfaction of the obligations in Paragraph 17 of this Section, Paragraphs 21 and 22 of Section VI, and subject to Section VII of this Order.

17.     With regard to any redress ordered under this Section, if any Defendant receives, directly or indirectly, any reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, or if any Defendant secures a tax deduction or tax credit with regard to any federal, state, or local tax, that Defendant must: (a) immediately notify the Enforcement Director in writing, and (b) within 10 days of receiving the funds or monetary benefit, must transfer to the Bureau the full amount of such funds or monetary benefit (Additional Payment) to the Bureau or to the Bureau's agent according to the Bureau's wiring instructions. After the Bureau receives the Additional Payment, the amount of the judgment referenced in Paragraph 16 of this Section will be reduced by the amount of the Additional Payment and the Additional Payment will be applied toward satisfaction of the monetary judgment entered in Paragraph 16.

18.     Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or to the Bureau's agent according to applicable statutes and regulations to be used for redress for injured consumers, including refund

of moneys, restitution, damages, or other monetary relief, and for any attendant expenses for the administration of any such redress.

19.     If the Bureau determines, in its sole discretion, that redress to consumers is wholly or partially impracticable or if funds remain after redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury. Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

20.     Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

## VI.

## Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

21.     Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint, and taking into account Defendants' sworn and documented inability to pay as set forth below, Defendants must pay a civil money penalty of $950,000 to the Bureau.

22.     Within 10 days of the Effective Date, Defendants must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

23.     The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

24.     Defendants, for all purposes, must treat the civil money penalty paid under this Order as a penalty paid to the government. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

a.    Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

b.    Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

25.    In the event of any default on Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of entry of judgment to the date of payment, and will immediately become due and payable.

26.    Defendants relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendants.

27.    The facts alleged in the Complaint will be taken as true and be given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by or on behalf of the Bureau, including in a proceeding to enforce its rights to any payment or monetary judgment under this Order.

28.    Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to the Bureau, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

29.    Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Defendants must notify the Enforcement Director of the final judgment, order, or settlement in writing. That notification must state the amount of redress, if any, that

Defendants paid or are required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendants may not argue that Defendants are entitled to, nor may Defendants benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendants based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendants must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

**VII.**

**Effect of Misrepresentation or Omission Regarding Financial Condition**

**IT IS FURTHER ORDERED** that:

30.    The suspension of the monetary judgment in Section V and the civil money penalty imposed in Section VI are expressly premised on the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and supporting documents submitted to the Bureau, which Defendants assert are truthful, accurate, and complete, and which include:

a.    Financial Statement of Defendant Climb Credit, Inc., including the attachments, signed and submitted to the Bureau on or about August 29, 2023.

b.    Documents supporting the August 29, 2023 Financial Statement of Defendant Climb Credit Inc., submitted to the Bureau on or around September 22, 2023.

c.    Updated Financial Statement of Defendant Climb Credit, Inc., including the attachments, signed and submitted to the Bureau on or about March 1, 2024.

d.    Financial Statement of Defendant Climb Investco, LLC, including the attachments, signed and submitted to the Bureau on or about March 1, 2024.

e.    Financial Statement of Defendant Climb GS Loan Fund 2018-1, LLC, including the attachments, signed and submitted to the Bureau on or about March 1, 2024.

f.    Financial Statement of Defendant 1/0 Capital, LLC, including the attachments, signed and submitted to the Bureau on or about March 1, 2024.

g.    Financial Statement of Defendant 1/0 Holdco, LLC, including the attachments, signed and submitted to the Bureau on or about March 1, 2024.

31.    If upon motion by the Bureau, the Court determines that any Defendant has failed to disclose any material asset or that any of its financial statements contain any material misrepresentation or omission, including materially misstating the value of any asset, then, by reason of the violations of law described in the Complaint, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendants will be required to pay an additional civil money penalty of $5,050,000, which is the amount of the discount provided to account for Defendants' inability to pay a greater amount in determining the civil money penalty imposed in Section VI, and the Court shall terminate the suspension of the monetary judgment entered in Section V of this Order ($6,618,000). Then, without further adjudication, the Court shall reinstate the judgments as

entered in Sections V and VI and the full amount of $12,618,000 shall be immediately due and payable, less any amounts paid to the Bureau under Section V or VI of this Order.

32.     If the Court requires Defendants to pay the additional monetary penalty and/or terminates the suspension of the monetary judgment under this Section, in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court, and proceedings instituted under this provision would be in addition to, and not in lieu of any other civil or criminal remedies as may be provided by law, including any other proceedings that the Bureau may initiate to enforce this Order.

## COMPLIANCE PROVISIONS

## VIII.

## Reporting Requirements

**IT IS FURTHER ORDERED** that:

33.     Defendants must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against any Defendant; or a change in any Defendant's name or address. Defendants must provide this notice, if practicable, at least 30 days before the development, or as soon as practicable after learning about the development, but in any case no later than 14 days after the development.

34.     Within 7 days of the Effective Date, each Defendant must:

    a.     Designate at least one telephone number and email, physical, and postal

addresses as points of contact that the Bureau may use to communicate with

Defendant.

    b.     Identify all businesses for which any Defendant is the majority owner, or that

any Defendant directly or indirectly controls, by all of their names, telephone

numbers, and physical, postal, email, and Internet addresses.

    c.     Describe the activities of each such business identified pursuant to

Paragraph 33(b), including the products and services offered, and the means

of advertising, marketing, and sales.

35.     Within 7 days of the Effective Date, Defendant Climb Credit, Inc. must designate at least one telephone number and email, physical, and postal addresses as points of contact for consumers with inquiries related to consumer relief under the Order.

36.     Defendants must report any change in the information required to be submitted under Paragraphs 34-35 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

## IX.

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

37.     Within 7 days of the Effective Date, each Defendant must submit to the Enforcement Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

38.    Within 30 days of the Effective Date, Defendants must deliver a copy of this Order to each of their Board members and executive officers, as well as to any managers, employees, Service Providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

39.    For 5 years from the Effective Date, Defendants must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section VIII, any future Board members and executive officers, as well as to any managers, employees, Service Providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

40.    Defendants must secure an Order Acknowledgement, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. §§ 7001-7006, within 30 days of delivery, from all persons receiving a copy of this Order under Section IX.

41.    Within ninety days from the Effective Date, and on the anniversary of the Effective Date every year for five years, Defendants must provide the Bureau with a list of all persons and their titles to whom this Order was delivered through that date under the Section of this Order titled "Order Distribution and Acknowledgment" and a copy of all signed and dated statements acknowledging receipt of this Order under Paragraphs 38-40.

## X.

### Recordkeeping

**IT IS FURTHER ORDERED** that:

42.    Defendants must create, for at least 7 years from the Effective Date, documents and records necessary to demonstrate full compliance with the Compliance Plan and each provision of this Order, including all submissions to the Bureau. Defendants must retain these

documents for at least 7 years after creation and make them available to the Bureau upon the Bureau's request.

43.     Defendants must maintain, for at least 7 years from the Effective Date or 7 years after creation, whichever is longer:

     a.     Copies of all sales scripts, training materials, advertisements, websites, and other marketing materials used in connection with the advertising, marketing, promotion, or offering of any Consumer Financial Product or Service, including any such materials used by a third party on Defendants' behalf.

     b.     Documents sufficient to demonstrate the experience of consumers on each materially different version of each website on which Defendants, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, affiliate, or other entity, advertises, promotes, markets, offers for sale, sells, or provides products or services.

44.     All documents and records must be maintained in their original electronic format. Data should be centralized, and maintained in such a way that access, retrieval, auditing, and production are not hindered.

45.     Defendants must make the documents identified in Paragraphs 42-43 available to the Bureau upon the Bureau's request.

## XI.

## Notices

**IT IS FURTHER ORDERED** that:

46.     Unless otherwise directed in writing by the Bureau, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "CFPB v. Climb Credit, Inc., Case No. 24-cv-7868," and send them by email to Enforcement_Compliance@cfpb.gov:

> ATTN: Enforcement Director
> Consumer Financial Protection Bureau
> Division of Enforcement

## XII.

## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

47.     Defendants must cooperate fully to help the Bureau determine the identity and location of, and the amount of injury sustained by, each Affected Consumer. Defendants must provide such information in their or their agents' possession or control within 14 days of receiving a written request from the Bureau.

48.     Climb Credit must remain registered for the Bureau's Company Portal and in connection with responding to consumer complaints and inquiries on the Company Portal, must comply with the timely response requirements set forth in § 1034(b)(1)-(3) of the CFPA, 12 U.S.C. § 5534(b).

49.     Unless otherwise prohibited by law or regulation, Climb must disclose on its consumer-facing website that consumers can file a complaint with the Bureau and also provide the applicable telephone, website, and mailing information to do so.

## XIII.

## Compliance Monitoring

**IT IS FURTHER ORDERED** that:

50.     Within 14 days of receipt of a written request from the Bureau, Defendants must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

51.     For purposes of this Section, the Bureau may communicate directly with any Defendant, unless that defendant retains counsel related to these communications. Defendants must permit Bureau representatives to interview any employee or other person affiliated with any Defendant who has agreed to such an interview regarding: (a) this matter, (b) anything related to or associated with the conduct described the Complaint, or (c) compliance with this Order. The person interviewed may have counsel present.

52.     Nothing in this Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## XIV.

## Transfer or Assignment of Operations

**IT IS FURTHER ORDERED** that:

53.     Should any Defendant seek to transfer or assign any part of its operations that are subject to this Order, that Defendant must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

**XV.**

**Retention of Jurisdiction**

**IT IS FURTHER ORDERED** that:

54.     The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

**IT IS SO ORDERED**.

DATED this 6th day of ____ December ____, 2024.

New York, New York

_____
Jennifer L. Rochon
United States District Judge